PEOPLE v 3474 FAIRVIEW

OPINION OF THE COURT

1. CRIMINAL LAW—SEARCHES AND SEIZURES—RECORDER'S COURT—TI-
TLE DETERMINATIONS—JURISDICTION.

The Recorder's Court of Detroit does not have jurisdiction to
determine title to monies seized under a search warrant issued
by that court where no arrests were made as a result of the
warrant or seizure, no criminal proceedings are pending there-
from, and the monies were not taken from the presence of the
person claiming title to them nor from premises registered in
his name.

DISSENT BY M. F. CAVANAGH, P. J.

2. COURTS—JURISDICTION—RECORDER'S COURT—SEARCHES AND SEI-
ZURES—TITLE DETERMINATIONS.

*Circuit court has primary jurisdiction to try title questions, but a
recorder's court has jurisdiction to order the return of funds
seized under a search warrant which it has issued and from
which no arrests ensued where no government agency claims
any interest in the funds and no other individual asserts a
contrary right to possession.*

Appeal from Recorder's Court of Detroit, Samuel
C. Gardner, J. Submitted December 8, 1977, at
Detroit. (Docket No. 77-1282.) Decided February
23, 1978. Leave to appeal denied, 402 Mich 945.

Motion by Zack Garrett in Recorder's Court for
the City of Detroit seeking an order requiring the
City of Detroit to return personal property seized
under a search warrant. An order was entered for

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 68 Am Jur 2d, Searches and Seizures §§ 118, 119.

return of the property. The City of Detroit appeals by leave granted. Reversed.

*Roger Craig,* Corporation Counsel, *Tom Gallagher,* Assistant Corporation Counsel, and *Raymond L. Feul,* Legal Advisor, for the City of Detroit.

*Miller, Amberg & Cristini, P. C.,* for claimant Zack Garrett on appeal.

Before: M. F. CAVANAGH, P. J., and J. H. GILLIS and D. C. RILEY, JJ.

J. H. GILLIS, J. On August 6, 1975, a Recorder's Court Judge for the City of Detroit issued a search warrant for a dwelling house located at 3474 Fairview in the City of Detroit. The warrant authorized the seizure of various drugs, narcotics paraphernalia, guns, and monies used and earned in narcotics trafficking.

Pursuant to the warrant, a narcotics raid was conducted on the premises during which police seized monies in the amount of $17,178.98, assorted drugs, and other personal property.

The officers also seized various documents that indicated that the premises was the residence of three individuals, Moses Garrett, Charles Garrett, and Ronald Garrett.

No arrests were made during the raid or subsequent thereto.

Subsequent to the seizure of the money, the State of Michigan issued a jeopardy assessment against one of the lessees, Ronald Garrett. The Detroit Police Department paid over $15,297.77 to the State of Michigan to satisfy the assessment, and paid over the remaining $1,881.20 to the treasurer of the City of Detroit.

On April 15, 1977, Zack Garrett, through his attorney, filed a motion in recorder's court for the return of the seized monies.[1] The motion alleged that Zack Garrett was the lessee of 3474 Fairview during the raid which took place in 1975, and that the monies seized were his.

Appellant, City of Detroit, answered this motion by claiming a question of title as to the monies was presented and that recorder's court lacked jurisdiction to rule on such a motion. The court disagreed and ordered the appellant to pay the monies over to Zack Garrett. The City of Detroit then appealed to this Court for emergency application for leave to appeal and moved for a stay of proceedings. On April 19, 1977, this Court ordered that the application for emergency leave to appeal be held in abeyance and granted the motion for immediate consideration and stay of proceedings. On May 25, 1977, this Court granted the application for leave to appeal.

The sole issue raised on appeal is whether or not recorder's court possesses the jurisdiction to order the return of the monies seized during the raid to Zack Garrett.

The jurisdiction of the Detroit Recorder's Court is set forth in MCLA 726.11; MSA 27.3561.

*"The said recorder's court shall have original and exclusive jurisdiction of all prosecutions and proceedings in behalf of the people of this state, for crimes, misdemeanors, and offenses arising under the laws of this state, and committed within the corporate limits of the city of Detroit,* except in cases cognizable by the police court of the city of Detroit, or by the justices of the peace of said city; and shall have power to issue all lawful writs and process, and to do all lawful acts which may be necessary and proper to carry into com-

---

[1] This action is for the $1,881.20 retained by the City of Detroit.

plete effect the powers and jurisdiction given by this act, and especially to issue all writs and process, *and to do all acts which the circuit courts of this state, within their respective jurisdictions, may, in like cases, issue and do by the laws of this state:* Provided, that this section shall not be construed to prevent the grand jury for the county of Wayne from inquiring into and presenting indictments, as heretofore, for crimes and offenses committed within the limits of said city." (Emphasis supplied.)

This Court must first determine whether or not the instant matter involves a criminal prosecution or proceeding which is necessary for recorder's court jurisdiction.

In *People v Ewald,* 302 Mich 31; 4 NW2d 456 (1942), the Supreme Court of this state said:

"It is our conclusion that the exclusiveness of jurisdiction of the recorder's court does not extend to the initiatory step in the institution of proceedings, but merely to matters subsequent thereto connected with bringing an offender to trial * * * ." 302 Mich at 40.

This Court has interpreted the *Ewald* case in *People v Moss,* 68 Mich App 614, 617; 244 NW2d 1 (1976):

"Nor do we find that the 'original and exclusive' jurisdiction of recorder's Court, MCLA 726.11; MSA 27.3561, applies to more than 'prosecutions and proceedings', *People v Ewald,* 302 Mich 31; 4 NW2d 456 (1942). *That exclusiveness does not apply to proceedings for the discovery of crime, Ewald, supra, and search warrants are for the discovery of crime."* (Emphasis supplied.)

In the instant matter, no arrests were made, and no criminal proceedings are pending. The issuance

of a search warrant was the only action taken by the court. Under these circumstances, the controversy would seem to be outside the jurisdiction of recorder's court.

However, MCLA 726.11; MSA 27.3561 has been construed to grant recorder's court the authority to determine the right to possession of money seized by law enforcement officials.

"We do hold that in criminal cases similar to the one before us in this appeal, it is the ancillary right and duty of the recorder's court to determine the right to possession of money or goods illegally seized by law enforcing officials." *People v Rosa,* 382 Mich 163, 168; 169 NW2d 297 (1969).

The facts in the instant matter are clearly distinguishable from those presented in the *Rosa* case, *supra.*

In *Rosa, supra,* an individual was seeking the return of monies seized from his hotel room. The individual was arrested and forcibly brought before recorder's court. The money was seized in his presence and from a room that was registered to him. Hence, the only issue presented to the court was who had the paramount right to possession of the monies, the individual or the state.

In the instant matter, Zack Garrett was not forcibly brought before the court. On the contrary, Mr. Garrett has filed a motion in recorder's court requesting the court to order the City of Detroit to pay over the seized monies to him.

Unlike *Rosa,* the monies seized in the case at bar were not taken in Mr. Garrett's presence nor from premises registered in his name. Therefore, Mr. Garrett's motion raises two questions for consideration: 1) who has the paramount right to possession of the monies, Mr. Garrett or the city;

and 2) whether Mr. Garrett was the owner of the monies at the time of their seizure.

The second question raises an issue outside the scope of recorder's court jurisdiction as evidenced by *Rosa, supra.*

"We are not considering an appeal involving an action that was started by defendant-appellee in the recorder's court to try question of title, but a case where defendant was forcibly brought before the recorder's court, where the issue presented is the superior right to possession as between the seizing authority and the one from whom the property was seized.

\* \* \*

"We do not interpret the Court of Appeals' decision (as does plaintiff) as an authorization to the recorder's court to exercise general jurisdiction determining questions of title, and specifically hold that the statute does not grant such powers." 382 Mich at 167, 168.

Accordingly, we rule that the facts presented in the instant matter would require recorder's court to decide a question of title which is outside the scope of its jurisdiction. The proper forum would be in a court having civil jurisdiction.

Reversed. No costs, a public question being involved.

D. C. Riley, J., concurred.

M. F. Cavanagh, P. J. *(dissenting).* I must dissent from the majority's conclusion that MCLA 726.11; MSA 27.3561, does not allow recorder's court to exercise jurisdiction in the instant case.

My colleagues first accept *People v Ewald,* 302 Mich 31; 4 NW2d 456 (1942), as authority for the proposition that the exclusive jurisdiction of recorder's court does not extend to the issuance of a search warrant, a proceeding for the discovery of

crime. There is support for this interpretation, if the statements in *Ewald, supra,* are read without reference to the particular circumstances of that case. As I stated, obviously unpersuasively, in my dissent in *People v Moss,* 68 Mich App 614, 618; 244 NW2d 1 (1976), *lv den* 399 Mich 836 (1977):

"The statement in *People v Ewald,* 302 Mich 31; 4 NW2d 456 (1942), that proceedings for the discovery of crime are not prosecutions and proceedings for crimes within the meaning of the recorder's court jurisdiction statute does not require a different result. *Ewald* involved the authority of a one-man Wayne County grand jury, conducting an investigation into crimes in Detroit, to issue an arrest warrant for a crime committed within the city. The recorder's court jurisdiction statute contains a specific proviso preserving the authority of the grand jury to inquire into and make accusation of crimes committed within the city. The instant case does not involve the authority of a grand jury, one-man or otherwise."

The issuance, execution and return of the search warrant here was merely the first step of what presumably was anticipated to result in an arrest and criminal prosecution. It does not seem logical to me to say that because no arrest ensued after the warrant was returned to recorder's court, that court lost any jurisdiction it might otherwise possess to dispose of the seized funds.

I consider *People v Rosa,* 382 Mich 163; 169 NW2d 297 (1969), to be ample authority for the trial judge's actions here. That this is so is made clearer by a reading of this Court's rationale in *People v Rosa,* 11 Mich App 157; 160 NW2d 747 (1968).

"Under the terms of this jurisdiction delimiting statute, in order for the recorder's court to have authority

to return the cash, it must first be decided that a circuit court also would have the authority to make disposition in a criminal case of cash obtained under identical circumstances.

"In *People v Williams* (1961), 363 Mich 281, seized personal property and cash were claimed by third parties after the information in the case had been quashed. The Supreme Court, in a *per curiam* opinion, held the remedy, if any, in the *Williams Case* was 'on the civil side of the court.' That holding, however, was largely based on a 'lack of proper party in interest, neither affiant nor petitioner being party to criminal action in which petition is filed.' In cases brought by the accused parties for the return of illegally seized property the return has been ordered. *People v Krol* (1943), 304 Mich 623, *People v Marxhausen* (1919), 204 Mich 599 (3 ALR 1505); also see 20 MLP, Searches and Seizures, § 1, p 228 *et seq.* It is apparent that such return can be ordered by circuit courts in such cases, therefore, under the statutes, recorder's court can also order such returns.

"The question is now raised as to what return procedures would be compatible with the 4th Amendment of the Constitution of the United States, which was made fully applicable to the States by *Mapp v Ohio* (1961), 367 US 643 (81 S Ct 1684, 6 L Ed 2d 1081, 84 ALR2d 933). The people argue that recorder's court is not the appropriate tribunal in which to try complicated questions of title. A similar illegal seizure of cash was faced and decided under the principles of the 4th Amendment in *Berkowitz v United States* (CA 1, 1965), 340 F2d 168 (8 ALR3d 463). It was stated in that opinion that the basic concept of our American system incorporated in the 4th Amendment is that men have the right to be left in possession of their property unless valid authority for disturbing that possession can be shown to be based upon law. No complicated questions of title will be faced, as all that need be decided concerning seized property is the superior right of possession as between the seizing authority and the one from whom the property was seized. As pointed out in *Berkowitz*, this does not mean that an accused is entitled to receive possession of contraband of which the mere possession

is *per se* contrary to public policy. In the case of the seizure of noncontraband property, public policy against the unconstitutional seizure of property is so strong as not to allow undue vexation or delay in recovering property wrongfully seized."

The majority's attempt to distinguish *Rosa, supra,* cannot withstand analysis. They urge that the motion below raised two questions for consideration: (1) who has the paramount right to possession of the monies, Mr. Garrett or the city; and (2) was Mr. Garrett the owner of the monies at the time of its seizure? Each question relates to the other; however, neither is really determinative, for the reason, unobserved by my colleagues, that the city in oral argument admitted it has no valid claim whatever to the monies nor has it any knowledge of anybody other than the petitioner who lays claim to them. It is also worthy of note that in *Rosa,* as here, there were no criminal proceedings pending. The charges in *Rosa* had been dismissed well before the motion was made for return of the monies.[1]

In sum, the majority seems to strive for an unduly restrictive interpretation of recorder's court jurisdiction for no compelling reason. Why should this petitioner be forced at his expense to commence a civil action and seek relief in another forum? I agree, and I find nothing in *Rosa* to dispute, that circuit court has primary jurisdiction to try title questions, but it seems unnecessary to require petitioner to invoke that jurisdiction

[1] At the oral argument in this cause, counsel for the city, in response to the Court's inquiry, stated it to be his position that if, in *Rosa,* two years had lapsed from dismissal of the charges to the time of the motion, recorder's court would still have jurisdiction to return the funds. However, if, in this case, petitioner had brought his motion simultaneously with the return of the search warrant, recorder's court could not exercise jurisdiction. It is this inconsistency which troubles me.

where, as here, no government agency claims any
interest in the funds and no other individual
asserts a contrary right to possession. I would
affirm.